**Garland Gary QUEENSBERRY,**
**Plaintiff,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Defendant.**

**Civ. A. No. 3:93CV163.**

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 2, 1993.

On Motion to Reconsider Aug. 30, 1993.

**22**

Otis Kennedy Forbes, III, Wilson & Hajek, Virginia Beach, VA, for Garland Gary Queensberry.

Francis A. Cherry, Jr., Randolph, Boyd, Cherry & Vaughan, Richmond, VA, for Norfolk and Western Railway Co.

### MEMORANDUM OPINION

SPENCER, District Judge.

In this action, plaintiff Garland Gary Queensberry seeks damages under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, for injuries he is alleged to have suffered while employed by defendant Norfolk and Western Railway Company ("N & W") at Crewe, Virginia, on July 11, 1991.

This matter is presently before the Court on defendant N & W's Motion in Limine, in which defendant asks this Court to prohibit plaintiff from engaging, without defendant's consent, in *ex parte* communication with defendant's employees concerning the subject matter of this case. Defendant also asks that plaintiff be required to produce for inspection by defendant any *ex parte* statements previously taken from such employees.

As the parties' legal arguments are adequately presented in their written pleadings, a hearing on defendant's motion is not required. *See* Local Rule 11(K); Fed.R.Civ.P. 78.

For the reasons set forth below, defendant's motion will be GRANTED, subject to certain restrictions.

### I.

■ Under Virginia Code of Professional Responsibility Disciplinary Rule 7–103(A) (1993):[1]

> During the course of his representation of a client a lawyer shall not:
>
> (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.[2]

When one of the parties is a corporation, this rule prohibits *ex parte* communication with

> persons having a managerial responsibility on behalf of the organization, and ... any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 359 (1991) (quoting comment accompanying Model Rules of Professional Conduct Rule 4.2, a rule "substantially identical" to Model DR 7–104(A)(1) and Virginia DR 7–103(A)(1)); *see also* ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1410 (1978) (discussing Model DR 7–104(A)(1)) ("no communication with an ... employee of a corporation with the power to commit the corporation in the particular situation may be made by opposing counsel unless he has the prior consent of

---

1. This Court, in Local Rule 7(I), has adopted the ethical standards contained in the Virginia Code of Professional Responsibility.

2. This language is identical to that of Model Code of Professional Responsibility DR 7–104(A)(1).

the designated counsel of the corporation, or unless he is authorized by law to do so"). Thus, as an initial matter, the Court must determine whether defendant N & W's employees are individuals "whose statement[s] may constitute an admission on behalf of the organization."

Under Rule 801(d)(2) of the Federal Rules of Evidence, an employee's statement can be used against his employer as an admission if the statement "concern[s] a matter within the scope of the agency or employment" and was "made during the existence of the [employment] relationship." Fed.R.Evid. 801(d)(2)(D); *see also Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 618 (4th Cir.1991); *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 110 (M.D.N.C. May 4, 1993). Thus, "virtually any employee may conceivably make admissions binding on his or her employer." *McCallum*, at 110.

> As the district court noted in *McCallum,*
> Because any employee might bind the corporation pursuant to Fed.R.Evid. 801(d)(2)(D), it would seem fair that the employer's attorney ought to be present at any interview where an admission is made. On the other hand, it may be difficult to determine which employees fit into that category prior to an interview. To act cautiously may mean that no employee could be interviewed without opposing counsel's consent or a court order. Such a result could seriously jeopardize those cases where plaintiff ha[s] a critical need to be able to inexpensively conduct informal discovery....

*Id.* The apparent tension among the ethics of contacting an opponent's employees, the need for informal discovery, and the liberal scope of admissions under Rule 801(d)(2)(D), does not, however, present an insurmountable barrier in ascertaining an appropriate code of conduct.

> ... First, one can request permission for the company's attorney or seek permission from the Court.... The attorney who seeks court approval before contact does not risk an ethical violation, but one who does not acts at his or her peril....

Second, the sweep of Rule 801 is not as threatening as it may seem at first blush. It is true that the Federal Rules of Evidence ... now eliminate the need for the employee to have authority to speak before the employee's statements can constitute an admission by the employer.... However, the statement still must be within the scope of the agency or employment of the employee.... Employees do not come under Fed.R.Evid. 801(d)(2)(D) unless their job function has something to do with the issue at hand....

*Id.* at 110–11.

In this case, plaintiff apparently has held, or seeks to hold, *ex parte* discussions with employees who have knowledge of the work conditions and practices in the car repair shop in Crewe. It is readily apparent that these employees could only have acquired such knowledge in the course and scope of their employment, and that their statements might, upon the establishment of a sufficient foundation by plaintiff, be admissible under Rule 801(d)(2)(D) as admissions by a party-opponent. *See Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1567 n. 12 (11th Cir.1991) (steward's statement regarding condition of sliding glass door would have been admissible had plaintiff established that steward "legitimately acquired knowledge of the defective door in the course and scope of his employment"). Accordingly, *ex parte* communications with defendant's employees with regard to such issues are barred by Virginia DR 7–103(A), absent prior consent of defendant's counsel, unless such communications are otherwise authorized by law.

## II.

Plaintiff Queensberry argues that in this case, *ex parte* communications with defendant N & W's employees are "otherwise authorized" under the provisions of FELA. Plaintiff specifically relies upon 45 U.S.C. § 60, which states in pertinent part:

> Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as

to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: *Provided,* That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

Under this statute, an attorney retained by an injured railroad worker for the purpose of pursuing a FELA claim is a "person in interest" to whom accident information properly may be passed. *Sheet Metal Workers Int'l Ass'n v. Burlington N.R.R.,* 736 F.2d 1250, 1252 (8th Cir.1984).

In enacting 45 U.S.C. § 60, the intent of Congress was

> to prevent the railroad from making inaccessible to an injured employee other railroad employees whose testimony might be helpful to the injured employee if he chose to sue the railroad or, as the Court in *Hendley v. Central of Georgia R. Co.,* 609 F.2d 1146, 1150–51 (5th Cir.1980), said: "This section prohibits a railroad from disciplining or attempting to discipline an employee from furnishing information to an FELA plaintiff."

*Cavanaugh v. Western Md. Ry.,* 729 F.2d 289, 293 (4th Cir.1984); *see also* S.Rep. No. 661, 76th Cong., 1st Sess. 5 (1939), which states:

> The railroads maintain well-organized and highly efficient claim departments. When an employee is injured, the claim agent promptly endeavors to procure statements from all witnesses to the infliction of the injury, takes photographs, measurements, and obtains all available information considered necessary to protect the railroad company against a possible suit for damages.
>
> On the other hand, the claimant may be seriously handicapped in his attempt to procure the information necessary to the determination of the question of liability. For example, a substantial number of the railroads subject to the [Federal] Employers' Liability Act have promulgated rules which prohibit employees from giving information concerning an accident to anyone excepting certain specified company officials and claim agents.
>
> The purpose of the amendment under consideration [to add the language now codified at 45 U.S.C. § 60] is to prohibit the enforcement of such rules and permit those who have information concerning the facts and circumstances of a personal injury to give statements to the injured employee or his dependents, or to someone authorized to represent him or them.
>
> In relation to the investigation of facts upon which claims for injuries are based, humanity and justice demand that injured railroad men be accorded as much freedom of action as their employers enjoy.

The issue before the Court is the proper interplay between 45 U.S.C. § 60 and state ethical rules forbidding *ex parte* communications.

In *Garrett v. National Railroad Passenger Corp.,* Civ.A. No. 89–8326, 1990 WL 122911, 1990 U.S.Dist. LEXIS 10,868 (E.D.Pa. Aug. 14, 1990), the district court considered this question in the context of a Pennsylvania ethics rule [3] substantially similar to Virginia's DR 7–103(A)(1). In holding that 45 U.S.C. § 60 did not authorize *ex parte* communications in violation of that rule, the court stated:

**3.** Rule 4.2 of the Rules of Professional Conduct adopted by the Pennsylvania Supreme Court, which states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

While this section prevents the railroad from hindering or preventing any employee "from furnishing voluntarily information to a person in interest" regarding the facts of an accident, it does not authorize plaintiff's counsel to communicate with an employee *ex parte* in violation of Rule 4.2 once litigation has begun. Section 60 only prohibits the railroad from, through a policy or practice of intimidation or otherwise, barring employees from furnishing information regarding the facts of an accident voluntarily.

*Id.* at *2, 1990 U.S.Dist. LEXIS 10, 868, at *6–*7. The court therefore precluded the plaintiff in that case from using, at trial, "any statement, information or evidence" received from the railroad employee who was operating the front-end loader that struck the plaintiff. The Court did not, however, preclude the plaintiff from calling the employee as a witness at trial, or from attempting to obtain comparable information through the regular discovery process. *Id.* at *2, 1990 U.S.Dist. LEXIS 10, 868, at *7.

 Plaintiff Queensberry, in urging this Court to reach an opposite conclusion, points to the decision of the Georgia Court of Appeals in *Norfolk Southern Railway Co. v. Thompson*, 208 Ga.App. 240, 430 S.E.2d 371 (1993). This Court agrees with the Georgia court's conclusion that a defendant railroad may not lawfully withhold consent to interviews of its employees by a FELA plaintiff or his counsel. *Id.* 430 S.E.2d at 376. To state that a railroad must consent to such interviews, however, is not to say that such interviews may be conducted *ex parte* in violation of state ethics rules. Instead, such interviews are subject to the same ethical restrictions that are encountered by counsel for parties in all other cases involving a corporate defendant or plaintiff. Absent consent of the defendant railroad's counsel, the desired information must be accessed through normal discovery methods, such as depositions or other statements taken in the presence of defendant's counsel.[4]

Such a holding is not, as plaintiff argues, contrary to Congress' intent in passing 45 U.S.C. § 60. As defendant notes, accident information does not have to be obtained *ex parte* in order to flow freely and voluntarily. The Court finds no basis for an assumption that the mere presence of defendant's counsel at interviews would create any unfair advantage in favor of defendant, or would improperly coerce or intimidate railroad employees into withholding information. *Cf. Cavanaugh*, 729 F.2d at 294.

### III.

For the reasons discussed above, defendant N & W's Motion in Limine will be GRANTED, subject to the condition that N & W may not withhold its consent to depositions or other non-*ex parte* interviews with its employees.

An appropriate Order will issue.

On Motion to Reconsider

This matter is before the Court on plaintiff Garland Gary Queensberry's Motion to Reconsider. In his motion, plaintiff asks this Court to reconsider its Memorandum Opinion and Order of August 2, 1993, in which the Court granted, subject to certain conditions, defendant Norfolk and Western Railway Company's Motion in Limine.

Upon due consideration, plaintiff Queensberry's motion is hereby DENIED.[1]

And it is SO ORDERED.

---

4. The defendant railroad may not, of course, act unreasonably in dealing with plaintiff's requests to schedule such depositions or interviews. Any unreasonable conduct would, in effect, constitute a denial of consent.

1. The Court notes that the "chilling effect" claimed by plaintiff of the presence of a corporate representative on a rank and file employee should be minimal in FELA cases such as this. Railroad employees, unlike most workers, are expressly protected by federal law from employer retaliation for providing information to a plaintiff such as Queensberry. *See* 45 U.S.C. § 60.